**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
ROMEL OCHOA,

                     Plaintiff,

    -against-

AUCAY GENERAL CONSTRUCTION INC.
d/b/a/ K & T GENERAL CONSTRUCTION INC.
and HUGO AUCAY,

                     Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

19-CV-3866 (ENV) (ST)

**TISCIONE, United States Magistrate Judge:**

Plaintiff Romel Ochoa filed suit on July 3, 2019 under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* against Defendants Aucay General Construction Inc., doing business as K & T General Construction Inc., ("K & T General Construction") and Hugo Aucay ("Aucay") for unpaid overtime wages and other alleged labor law violations. Compl., ECF No. 1. After the defendants failed to answer or otherwise defend the action, the plaintiff requested a certificate of default. *See* Request Cert. Default, ECF No. 8. Following the Clerk's entry of default, the plaintiff filed a motion for default judgment, which was referred to me by the Honorable Eric N. Vitaliano. Mot. Default J., ECF No. 10; Order Referring Mot., Jan. 22, 2020. This Court respectfully recommends that the motion be GRANTED.

    **A.  Factual Background**[1]

Mr. Ochoa worked for the Defendants from March 1, 2011 to October 15, 2017. Compl. ¶ 16; Ochoa Decl., ECF No. 10-9 ¶¶ 3, 17. As its name suggests, K & T Construction is a construction company. Ochoa Decl. ¶ 5. Mr. Ochoa alleges that his job duties predominantly included laying bricks and blocks on construction sites. Ochoa Decl. ¶ 8. He alleges that he

---

[1] The following facts are derived from the plaintiff's complaint and are deemed to be true for the purpose of deciding the present motion.

worked Monday through Friday, from 8:00 a.m. to 5:00 p.m., and on Saturdays from 8:00 a.m. to 4:30 p.m.  Compl. ¶ 18; Ochoa Decl. ¶ 9.  From the beginning of his employment until the end of February 2015, he was paid $600.00 per workweek.  Compl. ¶ 19; Ochoa Decl. ¶ 10.  From March 2015 until the end of his employment, Mr. Ochoa was paid $650.00 per workweek.  Compl. ¶ 23; Ochoa Decl. ¶ 10.  In order to receive his pay, Mr. Ochoa alleges that he had to "sign blank documents which were not explained to [him] and which [he] did not understand."  Ochoa Decl. ¶ 13.  Mr. Ochoa alleges that he performed his duties for K & T General Construction at the direction and under the supervision of Defendant Aucay.  Compl. ¶ 25; Ochoa Decl. ¶ 7.

Mr. Ochoa filed suit in July 2019.  Compl.  Defendants were duly served with service of process and copies of the complaint.  *See* Summonses Returned Executed, ECF Nos. 5 & 6.  The deadline for Defendant K & T General Construction to file an answer was July 26, 2019; Defendant Ochoa's answer was due on August 26, 2019.  *Id.*  Neither of the defendants filed an answer or corresponded in any way with the court or with opposing counsel.  *See* Status Report, ECF No. 7.  After the Clerk of Court entered a default, the plaintiff filed a motion for default judgment.  Clerk's Entry Default, ECF No. 9; Mot. Default J., ECF No. 10.

### B. Applicable Law

A defending party who fails to adequately respond to a complaint risks default.  Courts are directed to engage in a two-step process for the entry of a judgment against a party who fails to defend: first, the Clerk of Court enters default, and second, a judgment is entered on the default.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  Rule 55(a) of the Federal Rule of Civil Procedure sets forth the first step as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a).  While a "typical" default is entered "because a defendant failed to file a timely answer[,] . . . a district court is also empowered to enter a default against a defendant that has failed to 'otherwise defend.'"  *Mickalis Pawn Shop*, 645 F.3d at 129 (citing Fed. R. Civ. P. 55(a)) (other citation and bracket omitted).

The second step is the entry of default judgment. In this step, the court "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled . . . ." *Id.* at 128. Following the clerk's entry of default, a court considers as true all factual allegations in the complaint relating to liability. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). But the court still must determine whether the factual allegations, taken as true, establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (following entry of default, the court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

By entry of default, the defaulting party does not concede liability, as stated above, nor does the defaulting party admit the plaintiff's factual allegations with respect to the amount of damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. After finding liability, a court must conduct an inquiry to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted); *see United States v. Myers*, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *J & J Sports Prods. v. Emily Bar Rest. Inc.*, No. 15-CV-6499 (RJD), 2016 WL 6495366, at *2 (Sept. 27, 2016) (citing Fed. R. Civ. P. 55(b)(2) & *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted by*, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016).

### C. Analysis

#### A. The FLSA Applies to the Plaintiff's Claims

The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014). To demonstrate entitlement to the FLSA's wage and overtime protections, a plaintiff must show: (1) that the defendant employed plaintiff; and (2) that the employment fell under the FLSA's individual or enterprise coverage provisions. *See Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96–97 (2d Cir. 2009) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985)); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wage for qualifying employees); 29 U.S.C. § 207(a)(1) (providing for overtime protection for qualifying employees).

To determine whether the defendant employed the plaintiff, there is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374–75 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).

Nevertheless, the Circuit has provided a "'nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Teri*, 980 F. Supp. 2d at 374–75 (citing *Barfield*, 537 F.3d at 143). Specifically, under the formal control test, the following factors are relevant to determine whether an individual-defendant employed the plaintiff: whether the defendant "(1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Despite these enumerated factors, however, a district court should consider any factor relevant to its

assessment of the economic realities of an employer-employee relationship. *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

To fall under the FLSA's individual coverage provision, the employee's work must directly involve or relate to "the movement of persons or things . . . among the several States or between any State and any place outside thereof." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 779.103) (emphasis omitted). To fall under enterprise coverage, the enterprise must have receipts greater than $500,000 and at least some employees must "handle, sell, or otherwise work on goods or materials that have been moved in or produced for" interstate commerce. *Id.* at 355 (quoting *Jones v. E. Brooklyn Security Services Corp.*, 11-CV-1021 (JG) (SMG), 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012)).

Mr. Ochoa's unopposed allegations are sufficient to show that he is entitled to the FLSA's protections. Mr. Ochoa alleges that Defendant Aucay "hired and fired the employees, maintained the employment records, determined the compensation of employees, and oversaw how people were paid." Ochoa Decl. ¶ 7. Mr. Ochoa also alleges that "Defendant Aucay controlled the terms of the Plaintiff's employment in that he would tell him what tasks to complete and on what time frame they needed to be completed." *Id.* ¶ 28. Indeed, "Defendant Aucay controlled the work schedule of all of the employees of K & T General Construction." *Id.* ¶ 27. Mr. Ochoa attested to receiving his pay "in a mixture of both check and cash . . . from Mr. Ochoa on a weekly basis." *Id.* ¶¶ 11, 12. Mr. Ochoa's allegations meet all four of the factors of the "formal control test" that is used to determine whether an individual defendant employed the plaintiff. This Court finds that Mr. Chowdhury acted as Mr. Khan's employer under the definition of the FLSA.

Second, Plaintiff Ochoa's allegations are also sufficient to conclude that Defendant Aucay employed Ochoa jointly with K & T General Construction. Mr. Ochoa alleges that he "performed his duties for the K & T General Construction, at the direction and under the control of Defendant Aucay." *Id.* ¶ 32. Furthermore, "Defendant Aucay[] exercised close control over the managerial operations of K & T General Construction, including the policies and practices concerning employees." *Id.* ¶ 33. A plaintiff's allegations that an individual and corporate defendant are part

of a common ownership or management of a business are sufficient to allege joint employment following a default. *See Pineda v. Masonry Contr., Inc.*, 831 F. Supp. 2d 666, 685–86 (S.D.N.Y. 2011). Based on the plaintiff's allegations, this Court finds that Mr. Ochoa was jointly employed by K & T Construction.

Third, the plaintiff's allegation that K & T Construction has an annual revenue in excess of $500,000 is sufficient to meet the pleading requirement for an FLSA claim in a default proceeding. Compl. ¶¶ 6–9; *see Cardoza v. Mango King Farmers Mkt. Corp.*, 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA." (citation omitted)), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Fourth, the plaintiff's allegations are sufficient to conclude that the defendants operated in interstate commerce. The plaintiff alleges that the defendants "were engaged in an industry having an affect on commerce within the meaning of 29 U.S.C. § 203." Compl. ¶ 12. The plaintiff alleges that he "regularly handled products which had been moved in commerce . . . ." Compl. ¶ 13. Furthermore, other courts in this District have routinely inferred, even absent specific allegations, that companies engaged in the construction industry are engaged in interstate commerce. *See, e.g.*, *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR) (VMS), 2017 WL 835321, at *5 (E.D.N.Y. Feb. 14, 2017), *R & R adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) ("Although the Complaint does not specify what products moved through interstate commerce, the allegations are sufficient for the purposes of the FLSA as it is likely that at least some of the materials required to operate a construction company originated from outside of New York."); *Duarte v. Falcon Gen. Const. Servs., Inc.*, No. 13-CV-596 (ADS) (GRB), 2014 WL 4906661, at *3 (E.D.N.Y. Sept. 11, 2014), *R & R adopted*, 2014 WL 4904759 (E.D.N.Y. Sept. 30, 2014) ("Since plaintiffs allege that defendants Falcon General, Falcon Development, and Sewell operated construction businesses, it is reasonable to infer, given the nature of the types of supplies typically used in construction, that plaintiffs handled goods and materials that moved in interstate commerce.").

Accordingly, this Court finds that the allegations in Mr. Ochoa's complaint, admitted by entry of default, are sufficient for this Court to conclude that Defendant Aucay employed Mr. Ochoa jointly with K & T Construction and his employment falls under the FLSA's protections.

*B. The NYLL Applies to the Plaintiff's Claims*

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." NYLL § 190(2). Because this definition is similar to the FLSA's definition, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Ntalianas v. B & A Contracting of Landmark, Inc.*, No. 16-CV-5934 (ADS) (GRB), 2018 WL 1701960, at *3 (Feb. 26, 2018) (citation and brackets omitted), *R & R adopted*, 2018 WL 1582294 (E.D.N.Y. Mar. 31, 2018).

As stated above, this Court finds that the plaintiff was jointly employed by Mr. Aucay and K & T Construction under the FLSA, and therefore this Court applies the same standards to find that the plaintiff is jointly employed by Mr. Aucay and K & T Construction under the NYLL. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 188–89 (S.D.N.Y. 2003).

*C. Timeliness under the FLSA and the NYLL*

The plaintiff filed suit in July 2019 to seek unpaid wages for a period of employment beginning in 2011. The NYLL has a six-year statute of limitations, *see* NYLL § 663(3), and the FLSA has a two-year statute of limitations, *see* 29 U.S.C. § 255(a), unless the plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years. *Id.*

An employee bringing suit bears the burden of showing that the alleged FLSA violations were willful. *He v. Home on 8th Corp.*, No. 09-CV-5630 (GBD), 2014 WL 3974670, at *6 (S.D.N.Y. Aug. 13, 2014) (citing *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)). "An employer willfully violates the FLSA when it 'either knew or showed reckless

disregard for the matter of whether its conduct was prohibited by' the Act." *Young*, 586 F.3d at 207 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Recklessness is defined as, at the least, an extreme departure from the standards of ordinary care, to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *He*, 2014 WL 3974670, at *6 (quoting *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)).

The plaintiff alleges that K & T Construction willfully violated both the FLSA and the NYLL. *See* Compl. ¶¶ 47, 52, 53, 55, 56. "Generally, courts have found that a defendant's default establishes willfulness." *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (citing *Hernandez v. PKL Corp.*, 12-CV-2276 (NG) (RML), 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013); *Rodriguez v. Queens Convenience Deli Corp.*, 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603 (SJ) (PK), 2019 WL 5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *R & R adopted*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) ("The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness.").

This Court deems the plaintiff's allegations to be admitted, by virtue of the defendants' default, finds that the defendants' violations were willful, and thus applies the three-year limitations period for the FLSA violations. Accordingly, given that the plaintiff filed his complaint on July 3, 2019, the limitations period for the FLSA claims extends to July 3, 2016, and the limitations period for the NYLL claims extends to July 3, 2013. *See, e.g.*, *Suarez Castaneda*, 2019 WL 5694118, at *7.

D.  *Liability and Damages*

By defaulting, a defendant admits the well-pleaded allegations relating to liability, but not those pertaining to damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. As stated above, once liability is established as to a defaulting defendant, the plaintiff must still establish damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. Under

Rule 55, a court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). A hearing is not required, however, as detailed affidavits and other documentary evidence can suffice. *Sun v. AAA Venture Capital, Inc.*, 15-CV-04325 (FB) (MDG), 2016 WL 5793198, at *3 (E.D.N.Y. Sept. 12, 2016) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted as modified by*, 2016 WL 5868579 (E.D.N.Y. Oct. 6, 2016). In this case, the complaint as well as the other documentary evidence suffices to establish the defendants' liability for the alleged labor law violations.

Mr. Ochoa seeks the following amounts upon a finding of liability: (1) $17,147.81 in unpaid overtime compensation under the FLSA (Kumar Decl. ¶ 30); (2) $10,156.93 in unpaid overtime compensation under the NYLL (*Id.* ¶ 32); (3) $27,304.74 in liquidated damages under both the NYLL and the FLSA (*Id.* ¶ 33); (4) $5,000 in statutory damages under NYLL § 195(1) (*Id.* ¶ 34); and (5) $5,000 in statutory damages under NYLL § 195(3) (*Id.* ¶ 35). In addition, Mr. Ochoa seeks pre- and post-judgment interest, attorneys' fees and costs, and an additional award of interest in the event that the judgment is not satisfied within 90 days.[2] *Id.* ¶ 36; Mem. Supp. at 11–15.

### a. Unpaid Overtime Wages

Under both the FLSA and the NYLL, an employee who works in excess of 40 hours in a single workweek is entitled to an overtime wage of at least one-and-a-half times the regular rate at which the employee is paid. *See* 29 U.S.C. § 207(a)(1); 12 NYCRR § 142-2.2; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013). "Although a plaintiff may be 'entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.'" *Gonzalez Mercedes v. Tito Transmission Corp.*, No. 15-CV-1170 (CM) (DF), 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725 (DC), 2010 WL 4159391, at *3

---

[2] The plaintiff abandons his request for attorneys' fees in his memorandum in support of this motion. *See* Mem. Supp. at 15.

(S.D.N.Y. Sept. 30, 2010) (brackets omitted)), *R & R adopted*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019). "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) (citation omitted).

To determine whether an employee received adequate compensation under the FLSA or the NYLL, a court must first determine the employee's regular rate of pay. "[T]he regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). Even though an employer may elect to compensate an employee on a weekly basis, "an employee's regular rate is nevertheless an hourly rate of pay, determined by dividing the employee's weekly compensation by the number of hours for which that compensation is intended." *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002). "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV- 0165 (DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608 (SLC), 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." (quoting *Pinovi v. FSS Enters., Inc.*, No. 13-CV-2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)).

Mr. Ochoa alleges that he worked 50.5 hours per week. Compl. ¶¶ 18; *see also* Ochoa Decl. ¶ 9 (alleging workweek hours); Mot. Default J., Ex. 10, ECF No. 10-10 ("Wage Table") (setting forth table used for calculating unpaid overtime wages).[3] Mr. Ochoa was paid a flat-rate

---

[3] Mr. Ochoa alleges that he worked 9 hours per day from Monday to Friday and 8.5 hours on Saturday, with a 30-minute lunch break each day.

salary of $600-$650 per week for the period of his employment. Compl. ¶¶ 19, 23. Despite regularly working in excess of 40 hours per week, Mr. Ochoa "never received any overtime premium for work performed in excess of the forty-hour week." Compl. ¶ 24; *see also* Ochoa Decl. ¶ 14. Even though K & T Construction has not put forth evidence that the flat-rate salary was intended for work performed in excess of the forty-hour week, here the plaintiff states, without further elaboration, that the presumption that Mr. Ochoa's flat-rate pay was intended to compensate him for the first forty hours of work does not apply. Kumar Decl. ¶ 26. Because Mr. Ochoa would be entitled to far greater damages if the presumption applied, this Court adheres to Mr. Ochoa's statement that the presumption does *not* apply.

In order to determine how much Mr. Ochoa is owed for his overtime work, the first step is finding his regular rate of pay ("RRP"). In order to calculate the regular rate of pay, this Court divides Mr. Ochoa's flat-rate compensation by the number of hours worked.

Mr. Ochoa deserves compensation for the hours worked in excess of 40 hours at 1.5 times his regular rate. *See, e.g.*, *Jiao*, 2007 WL 4944767, at *15; *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). Because Mr. Ochoa alleges that he was paid the flat-rate salary for all of the hours he worked, this Court finds that Mr. Ochoa should be awarded half of his regular rate of pay for the hours worked in excess of forty. The calculations are set forth in the table below.[4]

| Start | Finish | Hrs./Wk. | Wkly. Salary | RRP | OT Rate | OT Hrs. | Wks. | Wages Owed |
|---|---|---|---|---|---|---|---|---|
| 7/3/13 | 2/28/15 | 50.5 | $600 | $11.88 | $17.82 | 10.5 | 87 | $5,426.73 |
| 3/1/15 | 7/2/16 | 50.5 | $650 | $12.87 | $19.31 | 10.5 | 70 | $4,730.20 |
| 7/3/16 | 10/15/17 | 50.5 | $650 | $12.87 | $19.31 | 10.5 | 67 | $4,527.48 |
| Total | | | | | | | | $14,684.41 |

---

[4] Without explanation, the plaintiff calculates the third wage period (7/3/16–10/15/17) by applying a presumption that the plaintiff was compensated for a 40-hour workweek, despite his previous representation that the presumption does not apply to this action. *See* Wage Table, ECF No. 10-10. Because the plaintiff does not offer any explanation for the deviation in his own calculations, this Court refuses to apply the presumption to the third time period and instead finds that the plaintiff should be awarded consistently throughout, with the assumption that the plaintiff was paid a flat-rate salary for all hours worked.

Accordingly, this Court finds that the plaintiff is entitled to a total of $14,684.41 in unpaid overtime wages.

### b. Liquidated Damages

Under the FLSA, a district court is generally required to award liquidated damages in the amount of actual damages for unpaid minimum wage and overtime compensation unless the employer can show that it acted in good faith and had reasonable grounds for believing that it was compliant with the FLSA. *See Barfield v. New York Cty. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)). The NYLL provides for liquidated damages in the amount of actual damages unless an employer "proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). The Second Circuit has held that a plaintiff may not recover liquidated damages under both the FLSA and the NYLL; however, both statutes allow a liquidated damages award in the amount of 100 percent of the unpaid wages due. *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) ("Today the NYLL and FLSA liquidated damages provisions are identical in all material respects, serve the same functions, and redress the same injuries.").

The defendants have not put forth any evidence that they acted in good faith. *See Garcia v. Chirping Chicken NYC, Inc.*, 2016 U.S. Dist. LEXIS 32750, at *46 (E.D.N.Y. Mar. 11, 2016) ("Since the defendants have defaulted and not demonstrated that they acted in good faith in failing to pay overtime to plaintiffs, the Court finds that plaintiffs are entitled to an award of liquidated damages under the FLSA."). As such, this Court finds that the plaintiff should be awarded $14,684.41 in liquidated damages under NYLL § 198(1-a).

### c. Written Notice and Wage Statement Violations

The plaintiff alleges that the defendants "intentionally did not provide Plaintiff with a wage notice at the time of hire or at any time thereafter . . . ." Compl. ¶ 37; *see also* Compl. ¶ 42 ("Defendants failed to furnish Plaintiff with proper annual wage notices, as required by the NYLL."). Additionally, the plaintiff alleges that, "[t]hroughout his entire employment, Defendants paid Plaintiff on a weekly basis, without providing him with any wage statements that

reflected the amount of hours that he worked, his regular rate of pay or his overtime rate of pay for each hour he worked in excess of forty hours in a given workweek." Compl. ¶ 36; *see also* Compl. ¶ 42 ("Defendants failed to furnish Plaintiff with a proper statement with every payment of wages, as required by the NYLL.").

The New York Wage Theft Prevention Act ("WPTA"), effective April 9, 2011, mandates that employers provide employees, at the time that the employee is hired, with a notice containing the rate and frequency of his pay, NYLL § 195(1), and to furnish the employee with a written statement with each payment of wages, listing the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked. NYLL § 195(3). "The WTPA does not apply retroactively, and thus prior to April 9, 2011, defendants were not obliged to provide plaintiffs with wage statements." *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015) (collecting cases). "Prior to December 29, 2014, employers also were required to provide wage notices 'on or before February first of each subsequent year of the employee's employment with the employer.'" *Baltierra*, 2015 WL 5474093, at *11 (citing NYLL § 195(1)(a) (eff. Apr. 9, 2011 to Dec. 28, 2014)).

Mr. Ochoa was hired before the effective date of the WPTA—thus, even though he was not entitled to a wage notice in the first year of his employment, he was entitled to wage notices on or before February 1 of each subsequent year of his employment—namely, from 2012 onwards. Thus, he was entitled to a wage statement on February 1, 2012 and thereafter. *See id.* Mr. Ochoa was entitled to wage statements following the effective date of the WPTA, on April 9, 2011.

Prior to February 27, 2015, the WPTA entitled employees to recover statutory damages for wage notice violations of $50 per workweek, with a statutory maximum of $2,500, and statutory damages for wage statement violations of $100 per workweek, with a statutory maximum of $2,500. NYLL § 198(1) (eff. Apr. 9, 2011 to Feb. 26, 2015). Following its amendment, starting on February 27, 2015, the WPTA entitled employees to recover statutory damages for wage notice violations of $50 per work day, with a statutory maximum of $5,000, and statutory damages for wage statement violations of $250 per work day, with a statutory maximum of $5,000. NYLL §

198(1) (eff. Feb. 27, 2015 to Jan. 18, 2016); *see also* NYLL § 198(1) (eff. Jan. 19, 2016 to present) (containing identical provisions with respect to monetary amounts).

Mr. Ochoa is entitled to statutory damages from the beginning of the limitations period, July 3, 2013, to the termination of his employment on October 15, 2017. From July 3, 2013 to February 26, 2015, Mr. Ochoa is entitled to recover $50 per workweek for the wage notice violations and $100 per workweek for wage statement violations. Mr. Ochoa is entitled to recover the maximum statutory damages of $2,500 for wage notice violations and the maximum damages of $2,500 for wage statement violations between July 3, 2013 and February 26, 2015. From February 27, 2015 to the end of his employment on October 15, 2017, Mr. Ochoa was entitled to recover $50 per work day, with a statutory maximum of $5,000, for wage notice violations and $250 per work day, with a statutory maximum of $5,000. That period encompasses approximately 639 work days, excluding weekend days and holidays, and easily meets the statutory maximum damages of $5,000 for each violation. Accordingly, because Mr. Ochoa is entitled to the maximum statutory damages under both versions of the statute, this Court finds that he should be awarded $5,000 for wage notice violations and $5,000 for wage statement violations. *See Perez Garcia*, 2020 WL 1130765, at *11.

### d. Interest and Attorneys' Fees

#### a. Pre-judgment interest

Mr. Ochoa also seeks pre-judgment interest on his claims. *See* Mem. Supp. at 11–12. The Second Circuit has authorized an award of pre-judgment interest even where a plaintiff has already been awarded liquidated damages under the NYLL. *See Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir.1999); *see also Baltierra*, 2015 WL 5474093, at *11. Under New York law, liquidated damages are considered punitive, while pre-judgment interest compensates the plaintiff for the loss of money. *Perez Garcia*, 2020 WL 1130765, at *11.

Under New York law, the simple interest rate is 9% per annum, N.Y. C.P.L.R. § 5004, and is computed "on a simple interest basis." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). Under New York law, when damages "were incurred at various times, interest shall be

computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR 5001(b); *see Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012); *see also Israel v. Benefit Concepts New York, Inc.*, 9 F. App'x 43, 45 (2d Cir. 2001) (failing to utilize a single reasonable intermediate date or to calculate from each date damages were incurred "affords the plaintiff a windfall, and hence penalizes the defendant, in contravention of the compensatory purpose of [CPLR] 5001") (citation omitted).

Mr. Ochoa alleges that the midpoint for pre-judgment interest is March 1, 2015, without providing any indication for how the midpoint was calculated. Kumar Decl., ECF No. 10-1 ¶ 36. This Court calculates 2420 days between Mr. Ochoa's start date on March 1, 2011 and his end date on October 15, 2017. Accordingly, the midpoint of his employment is June 23, 2014—1210 days after his start date on March 1, 2011. *See Gunawan*, 897 F. Supp. 2d at 93 (calculating midpoint by using total number of days between start date and end date). Excluding liquidated damages, his actual damages under New York labor law are $14,684.41. Calculating pre-judgment interest from June 23, 2014 to the present date, this Court finds that 2,276 days have passed from that date. Therefore, the interest accrued through the date of this Report and Recommendation is $8,240.97[5], at a per diem rate of $3.62.

### b. Post-judgment interest

The plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961. *See* 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *Li v. Leung*, No. 15-CV-5262 (CBA) (VMS), 2016 WL 5369489, at *20 (E.D.N.Y. June 10, 2016), *R & R adopted as modified*, 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015). Under the statute, post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board

---

[5] ($14,684.41 * .09 * (2276/365))

of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a).

The plaintiff is entitled to the statutory post-judgment interest on the money judgment, which should be calculated by the Clerk of Court from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

    *c. Additional Interest*

The plaintiff requests additional interest in the event that the judgment is not satisfied within 90 days of the entry of judgment. Mem. Supp. at 13. New York law provides that any "judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4).

Although there has been some debate over whether the automatic increase applies to the total judgment or solely to awards of attorney's fees (*see Gonzalez-Diaz v. Daddyo's Mgmt. Grp.*, 16-CV-1907 (ENV) (RML), 2017 U.S. Dist. LEXIS 185397, at *9 (E.D.N.Y. Nov. 7, 2017), *R & R adopted by*, 2017 U.S. Dist. LEXIS 205344 (E.D.N.Y. Dec. 12, 2017)) several courts have found that the provision applies to the total judgment. *See, e.g., Romero v. Anjdev Enters.*, 14-CV-457 (AT), 2017 U.S. Dist. LEXIS 19275, at *34 (S.D.N.Y. Feb. 10, 2017); *Montellano-Espana v. Cooking Light Inc.*, 14-CV-1433 (SJ) (RLM), 2016 U.S. Dist. LEXIS 102675, at *20 (E.D.N.Y. Aug. 1, 2016); *Saldana v. New Start Grp., Inc.*, 14-CV-4049 (CBA) (RLM), 2016 U.S. Dist. LEXIS 87237, at *13-14 (E.D.N.Y. July 5, 2016).

This Court, however, believes that it is premature to decide the applicability of this provision. The statute "appears to contemplate this automatic increase only in the event that plaintiff unsuccessfully undertakes collection efforts, or at the very least, serves the defendant with notice that judgment has been entered." *Olvera v. Los Taquitos Del Tio Inc.*, 15-CV-1262 (BMC), 2015 U.S. Dist. LEXIS 75880, at *6 (E.D.N.Y. June 11, 2015). Therefore, this Court recommends that plaintiff only receive an automatic increase of judgment if, ninety days after he serves notice

of the judgment on the defendant, the plaintiff applies for an amended judgment to reflect the increase. At that time, the plaintiff may also provide additional briefing and documentation to show that he is legally entitled to an increase of the entire judgment. *Accord id*. at *7 ("Although I will not include this provision in the judgment, if plaintiff serves notice of the judgment on defendants, he may apply for an amended judgment to reflect this increase ninety days thereafter. The Court will defer consideration of whether he must also show, at that time, that he has also undertaken collection efforts that have proven unsuccessful.").

### E. Conclusion

This Court respectfully recommends that the plaintiff's motion for default judgment be GRANTED and the following amounts be awarded:

1) $10,156.93 in unpaid overtime wages under the NYLL;

2) $4,527.48 in unpaid overtime wages under the FLSA;

3) $14,684.41 in liquidated damages under the NYLL;

4) $10,000 for statutory wage notice and wage statement violations under the NYLL;

5) $8,240.97 in pre-judgment interest to date plus $3.62 per diem until the date that the final judgment is entered, and;

6) post-judgment interest at the federal statutory rate.

Counsel for the plaintiff shall forward a copy of this Report and Recommendation to the defendants at their respective last-known addresses and file proof of service with this Court within (15) business days.

**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                                                   /s/
                                         Steven L. Tiscione
                                         United States Magistrate Judge
                                         Eastern District of New York

Dated: Brooklyn, New York
        September 15, 2020